UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

| | | |
|---|---|---|
| RUFFIN PARKER, | ) | |
| Plaintiff, | ) | Civil No. 0: 20-144-WOB |
| V. | ) | |
| MR. ALAN BEARD, *et al.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Ruffin Parker is a federal inmate currently confined at the Federal Correctional Institution ("FCI") – Morgantown in Morgantown, West Virginia. Proceeding without an attorney, Parker has filed a civil complaint against officials at FCI-Ashland (located in Ashland, Kentucky) pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). [R. 8] By prior Order, the Court granted Parker's motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. [R. 11] Thus, the Court must conduct a preliminary review of Parker's complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A.

A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). The Court evaluates Parker's complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts the plaintiff's factual allegations as true, and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

The allegations of Parker's complaint are somewhat vague and disjointed, but his claims appear to relate to requests made to prison officials to stop Parker's transfer to another prison, as well as Parker's assignment to a top bunk and his injuries suffered when he fell off a top bunk. Parker alleges that, "on the first day of quarantine," he told Mr. Smith that he could not be locked in a small room because of his anxiety. Parker alleges that he asked Mr. Smith to get the Warden, but he failed to do so. Parker also alleges that Mr. Maza failed to put Parker on a bottom bunk after Parker told him that he cannot be on the top bunk; failed to get him a BP-8 form; failed to get the Warden for him; and failed to stop Parker's transfer.

Parker also alleges that, a week before the quarantine, he asked his case manager (Ms. Magnus) to get his transfer stopped because of the pandemic, but she failed to do so and also failed to get the Warden. He also asked Mr. Todd, Mr. Patton, Mr. Lester, and Mr. Issica to try to stop Parker's transfer, but none of them did. Parker alleges that the Warden (Allen Beard), who is responsible for all of the employees under him, failed to do his rounds and come talk to Parker, nor did the Warden answer his cop-out.

Finally, Parker alleges that he had a panic attack and, on October 27, 2020, he fell off the top bunk and hurt his right wrist. He states that, ten days later, Ms. Whitson (his health provider) took an x-ray of his right wrist. He states that "that was all they did for me I never seen the warden at all." [R. 8 at p. 4] He then states that he did not receive a BP-8 Form from Mr. Maza until two days before he was transferred and that "he never submit it I never got the response from it to go to the next step." [*Id.*]

Based on these allegations, he claims that he has been unlawfully detained. [*Id*. at p. 5] As relief, he requests that the Court order that he be released from custody and for the Defendants to pay monetary damages in the amount of $10.5 million to compensate him for his pain and

suffering, his freedom, and falling off the top bunk. [*Id*.] He brings his claims against 10 individual Defendants, including the Warden, Unit and Case Managers, health providers, and a counselor.

However, the Court has reviewed Parker's complaint and concludes that it must be dismissed for multiple reasons. A civil complaint must set forth claims in a clear and concise manner, and must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also* Fed. R. Civ. P. 8. "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). A conclusory claim that Defendants violated Parker's constitutional rights, with no factual allegations supporting such a claim, is insufficient to state a claim for relief. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."); *Laster v. Pramstaller*, 2008 WL 1901250, at *2 (E.D. Mich. April 25, 2008).

Here, Parker identifies no specific constitutional provision or federal law that he claims has been violated, but rather asserts broadly that he seeks to bring a claim of "unlawful detainment." [R. 1 at p. 8] Parker claims are brought pursuant to the doctrine of *Bivens*, which held that an individual may "recover money damages for any injuries...suffered as a result of [federal] agents' violation of" his constitutional rights." *Bivens* 403 U.S. at 397. However, while *Bivens* expressly validated the availability of a claim for damages against a federal official in his or her individual capacity, an officer is only responsible for his or her own conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 676-677 (2009). *See also Ziglar v. Abbasi*, 137 S.Ct. 1843, 1860 (2017). Thus, in order to

recover against a given defendant in a *Bivens* action, the plaintiff "must allege that the defendant [was] personally involved in the alleged deprivation of federal rights." *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (*citing Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976)).

First, Parker fails to state a *Bivens* claim against Warden Beard, as his claims are based on Parker's allegation that the Warden "failed to answer my copout [and] he is responsible for all of these people under him." [Record No. 8 at p. 4] To the extent that Parker alleges that Beard (or any other Defendant) failed to adequately respond to his complaints or grievances, *Bivens* liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *Nwaebo*, 100 F. App'x 367, 369 (6th Cir. 2004) (citing *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999)). Nor may personal liability be imposed upon Beard based upon his status as Warden, as the mere fact of supervisory capacity is not enough for *Bivens* liability. Rather, an official must be personally involved in the conduct complained of because *respondeat superior* is not an available theory of liability. *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981). *See also Iqbal*, 556 U.S. at 677 ("[i]n a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer.").

To the extent that Parker seeks to pursue claims against the individual Defendants for failure to prevent his transfer to another prison, his complaint also fails to state a claim for which relief may be granted. First, Parker does not articulate any reason why any of the Defendants had an obligation (either constitutional or otherwise) to prevent Parker's transfer to a different facility. Nor does Parker specify any constitutional right that he claims that the Defendants violated by failing to intervene to stop his transfer.

Construed broadly, his claims related to his transfer could possibly implicate Parker's Fifth Amendment Due Process rights. However, "[w]hen a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over 'the place of the prisoner's imprisonment,' and the treatment programs (if any) in which he may participate." *Tapia v. United States*, 564 U.S. 319, 331 (2011)(citing 18 U.S.C. §§ 3621(b), (e), (f); 3624(f); 28 C.F.R. pt. 544 (2010)). An inmate has no liberty interest in being placed in any particular penal institution, *Olim v. Wakinekona*, 461 U.S. 238, 247 (1983), or classified at any particular security level, *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995), and hence no rights protected by the Due Process Clause in that regard. *Sandin*, 515 U.S. at 484-86. *See also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("...the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.") (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) ("Congress has given federal prison officials full discretion to control [prisoner classification and eligibility for rehabilitative programs in the federal system], 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process."); *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003).

Moreover, the BOP's placement decisions are expressly insulated from judicial review, as the provisions of the Administrative Procedures Act ("APA") do not apply to such decisions. 28 U.S.C. § 3625 ("The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter."). Cf. *Woodard v. Quintana*, No. 5:15-cv-307-KKC, 2015 WL 7185478, at *5-6 (E.D. Ky. Nov. 13, 2015). For these reasons, Parker fails to state a claim for which relief may be granted

against any of the Defendants related to his requests that his transfer to a different facility be stopped.

Next, while Parker's allegations regarding his need for a lower bunk, as well as the medical treatment for his injuries suffered when he fell from his top bunk, construed broadly, possibly implicate the Eighth Amendment, he does not allege facts sufficient to state a claim for an Eighth Amendment violation against any of the named Defendants. An Eight Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To state a viable Eighth Amendment claim, a plaintiff must allege, with respect to each defendant, that the particular defendant: 1) was actually aware of a substantial risk that the plaintiff would suffer serious harm; and 2) knowingly disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

With respect to Parker's claim that he fell off the top bunk, he alleges only that "I told Mr. Maza I can't be on the top bunk he failed to put me on the bottom bunk." Parker does not allege that he had a diagnosed medical condition that required that he be assigned a bottom bunk, nor does he allege that he had a bottom bunk pass that Maza refused to honor. Parker's bare-bones allegation that he simply told Maza that "I can't be on the top bunk" is insufficient to adequately allege that Maza was actually aware of a substantial risk that Parker would suffer serious harm if he was assigned to a top bunk and that Maza knowingly disregarded that risk. As this is the only Defendant that Parker alleges was personally involved with his top bunk placement, Parker fails to adequately allege an Eighth Amendment claim related to his top bunk assignment.

Similarly, with respect to the treatment for the injury to his wrist, he alleges that Ms. Whitson (his health provider) took an x-ray. He does not make any allegations regarding the

6

results of that x-ray, nor does he allege that his wrist injury required any further treatment. The failure to provide adequate medical care violates the Eighth Amendment "only when the doctor exhibits 'deliberate indifference to a prisoner's serious illness or injury'…that can be characterized as 'obduracy and wantonness' rather than 'inadvertence or error in good faith.'" *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1977), and *Wilson*, 501 U.S. at 299)). Parker's allegation that Ms. Whitson took an x-ray of his wrist is simply insufficient to allege that she (or any other Defendant) was actually aware of a substantial risk of harm to Parker, which she knowingly disregarded.

Moreover, Parker's own allegations establish that he received medical care for his wrist injury from Ms. Whitson. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). Thus, when a prisoner has been examined and treatment provided but the prisoner merely disagrees with the course of care determined by his treating physician in the exercise of his medical judgment, his claim sounds in state tort law – it does not state a viable claim of deliberate indifference under the Eighth Amendment. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). *See also Lyons v. Brandy*, 430 F. App'x 377, 381 (6th Cir. 2011) (citing *Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)); *Durham v. Nu'Man*, 97 F. 3d 862, 868-69 (6th Cir. 1996). Even "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F. 3d 693, 703 (6th Cir. 2001). Because Parker admits that he received medical treatment

7

for his injury, he may not pursue an Eighth Amendment claim against his medical provider simply because he did not agree with the treatment provided.

Finally, it is clear from the face of the complaint that Parker has not exhausted his administrative remedies with respect to his claims.[1]  Under the Prison Litigation Reform Act of 1995 ("PLRA"), a prisoner wishing to challenge the circumstances or conditions of his confinement must first exhaust all available administrative remedies.  42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 231 (6th Cir. 2006).  The "mandatory language [of the PLRA] means a court may not excuse a failure to exhaust."  *Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016).  If the failure to exhaust administrative remedies is apparent from the face of the complaint, it is subject to dismissal upon initial screening.  *Shah v. Quintana*, No. 17-5053, 2017 WL 7000265, at *1 (6th Cir. July 17, 2017); *Barnett v. Laurel Co., Ky.*, No. 16-5658, 2017 WL 3402075, at *1 (6th Cir. Jan. 30, 2017).  *See also Jones*, 549 U.S. at 214-15 (district court may dismiss complaint *sua sponte* when it is apparent from the face of the complaint that claim is barred by affirmative defense).

Parker's complaint alleges that he submitted a request or appeal to the Warden on November 6, 2020, but he never got a response to go to the next step of the grievance process.  [R. 8 at p. 4-5]  However, the applicable federal regulation states that "[i]f the inmate does not receive

---

[1] The BOP's Inmate Grievance System requires a federal prisoner to first seek informal resolution of any issue with staff, and then to institute a formal grievance with the warden within twenty days.  28 C.F.R. § 542.13, 542.14(a).  If the prisoner is not satisfied with the warden's response, he or she must appeal to the appropriate regional office within twenty days, and if unsatisfied with that response, to the General Counsel within thirty days thereafter.  28 C.F.R. § 542.15(a).  *See* BOP Program Statement 1300.16.

a response within the time allotted for reply,…the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.  Thus, if the Warden did not respond to his request, that failure to respond is a constructive denial of his grievance and Parker may then appeal to the Regional Office, then the Office of the General Counsel.  He admits that he did not do so.  Thus, Parker's admission that he has not yet exhausted his administrative remedies in this case warrants dismissal of his complaint without prejudice.  *Napier v. Laurel County*, 636 F.3d 218, 222 (6th Cir. 2011).

For all of these reasons, Parker's complaint will be dismissed.  While his construed Eighth Amendment claims will be dismissed without prejudice, his construed Fifth Amendment Due Process claim based on his prison transfer will be dismissed with prejudice.

Accordingly, it is hereby **ORDERED** as follows:

1. Parker's complaint [R. 8] is **DISMISSED** for failure to state a claim for which relief may be granted**.**

    a. Parker's construed Eighth Amendment claims are **DISMISSED WITHOUT PREJUDICE**.

    b. Parker's construed Fifth Amendment Due Process claim is **DISMISSED WITH PREJUDICE**.

2. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

3. Judgment shall be entered contemporaneously herewith.

This 6th day of May, 2021.



Signed By:
*William O. Bertelsman* WOB
United States District Judge